This morning is 14-1394 Aviva Sports v. Fingerhut Direct Marketing. Mr. Schmidt. Thank you, Your Honor. May it please the Court, Tom Schmidt on behalf of the Retailer Defendants Kmart, Menard, and Fingerhut. Aviva's case against the Retailer Defendants was exceptionally weak from the start and only weakened as the case progressed. Aviva adopted an unsupportable claim construction position that directly contradicted the position it had taken before the PTO. It asserted Lanham Act standing against the retailer without any reasonable basis to think it had standing, and it persisted with its case long after the writing was on the wall, continuing to oppose summary judgment after the District Court's Markman ruling left it with no claim. What's the standard of review here? The standard of review is abuse of discretion, Your Honor, as the Supreme Court— Carl Judge carefully went over all these points, every one that you mentioned, and found otherwise. That's true, Your Honor. We think that was a clear error of judgment. Abuse of discretion is deferential, to be sure, but it's not—it doesn't mean a case is unreviewable. And, in fact, since Highmark, this Court has reversed District Court's exceptional case determinations in a number of cases. In BX v. NVIDIA, for instance, the first case that came up after Highmark, this Court reversed the District Court's determination that a case was not objectively baseless. In a separate case, Opalist Technologies, this Court reversed— Where's the legal error here? Are you alleging legal error? No. No, Your Honor. We're not alleging legal error. We think it was an abuse of discretion, an error of judgment, just like this Court found in Braymont. Because somebody—do you know how many cases we have where parties, the opposing party, has denied or opposed a State petition? Is opposing a State petition a basis for awarding attorneyship? Your Honor, not alone. We think the strongest bases are, first of all, what we think is the frivolous claim construction position that they adopted, and then not giving up the case when it would have been reasonable to do. Your Honor's opinion in Raylon, we think, is most directly on point. There, Your Honor said, of course, it's abuse of discretion. It is a deferential standard, but there is a threshold below which a claim construction position is so unreasonable that it renders a case exceptional. And this Court reversed, even under an abuse of discretion review. Now, that case, to be sure, was before Highmark, but that doesn't matter for two reasons. The first was that there were both Rule 11 sanctions at issue in that case and exceptional case determination at issue in that case. And the Rule 11 issue was reviewed under regional circuit law, and that was abuse of discretion. And this Court still reversed the district court's determination that it wasn't frivolous. And second of all, there was a petition for cert to the Supreme Court in Raylon after Highmark had been granted, and the Supreme Court just denied the petition outright. So if there's any argument that Highmark somehow weakened Raylon or undermines Raylon, we don't think that's persuasive. The Supreme Court would agree, Your Honor. Let's take one of the points you mentioned, which is that after they got the claim construction, one of your points is they should have dropped it, and they pursued a DOE claim, and they lost on that DOE claim because there was an insufficient showing. I don't know if it comes up in any research you've done, but we see quite a number of cases in which somebody alleges DOE, they lose on summary judgment, and we just say simply the testimony was conclusory and they just haven't. It seems, I mean, if the standard the Supreme Court has set means this case stands out among others, even in my experience here at the Appeals Court reviewing district court, that is, alleging DOE without having a sufficient basis for doing so does not stand out as being the most unusual thing we see around here. Your Honor, we appreciate that in the mine run of cases after Highmark, it's not going to be appropriate to reverse the district court's exceptional case determination, but we don't think that changes the basic point that there is a threshold below which it is unreasonable enough that reversal is warranted, and we think this is such a case. The doctrine of equivalence argument is a good example in that, first of all, the district court found it wasn't even developed enough to rule on. The district court said it was truly just conclusory, and there was hardly any argument even made in support of it. I think there was a single sentence in their opposition to summary judgment which just said it was a jury issue without pointing to any evidence. And even on the merits, had they developed it more, it would have been weak as well because it basically vitiated one of the key limitations of the patent, which was of Claim 14 of the patent, which was the manner in which the side rails of the slide were formed. So we think, again, in the mine run of cases, it's not going to be appropriate to reverse, but there is a threshold below which it is unreasonable enough that it is appropriate, and we think this case is below the threshold. So maybe I could just talk about Claim 14 for a moment and the claim construction dispute. The key dispute, just to refresh your memory, was the meaning of the word baffle, and the question was whether the baffle had to be entirely inside the body of the slide or it could be partially external. Right, and there's nothing in the claim language that directs you, that answers that question. We think there is, Your Honor, because what the claim language says is the baffle has to interconnect the base to the upper surface of the slide. We don't think any portion of a baffle that extends beyond the top of the sliding surface can be a baffle if it's exclusive of upper surface. So I garbled that a little bit. The idea is it has to interconnect the base and the upper surface, so it can't be part of the upper surface. And I would point, Your Honor, to the specifications. So the patent itself is at the end of the opening brief. It's also in the joint appendix. So the relevant diagram, Your Honor, is on page A724. And you'll see number 29 there is pointing to basically the inner surface of the side rail. Now, the specification itself, a couple pages later, labels 29, quote, the upper surface. In one of their briefs before the PTO, Aviva similarly labeled that the upper surface. And so we think if the claim language is that a baffle has to interconnect the base and the upper surface, it cannot include that part which the patent itself has labeled the upper surface. But Mr. Schmidt, almost every case that comes before us has a difference of opinion on claim construction, and some of the positions are just poor and unsubstantiated and wrong. And if we were to find that being wrong amounts to sanctionable conduct, you'd be involved in a very risky business. Absolutely. And we don't dispute that, Your Honor. At the same time, the Supreme Court did in Octane considerably lower the standard for awarding attorney's fees in patent cases. But this court had two cracks at the issue, one post-Octane, and it still came out the same way. Absolutely. But we still think the basic point of Raylon, Chief Judge Pro's opinion in Raylon, stands, which is that it's entirely true that almost every patent dispute is going to resolve into some dispute about claim construction. You can't award attorney's fees in all of them, but that doesn't mean there isn't some objective threshold of reasonableness below which a claim construction is frivolous enough that it warrants a reversal of the district court's judgment there. And we think this is such a case. There's the claim language interconnecting the base and the upper surface. The claim language also requires the baffles to perform a specific structural function, which is maintaining the inflatable body in wedge shape, and only the internal part of a baffle would perform that space or function. We think the diagrams and the specification are all quite clear, and we think the prosecution history is quite clear that Aviva disclaimed this specifically during the reexamination of the patents. When you put all those things together, we think it really was quite a weak claim construction position, and enough to render the case exceptional. Now, after the district court's Markman ruling, Aviva continued to oppose summary judgment, as we discussed, without a viable infringement theory. In fact, its own expert conceded that Manley's slides had the exact same structure as the diagram the district court had used to show what the claims do not cover, so there was really nothing there. And then beyond that, Aviva continued with claims 18 and 19 right up until the eve of trial, even though it had very little evidence of damages, and in fact conceded in its motion to dismiss that damages were de minimis, and it persisted nonetheless right up until the eve of trial, and moved to dismiss only two weeks before, after a lot of expensive preparation had happened. The case was actually dismissed one week before trial, but after motions eliminate had been filed, and we think that's a factor that weighs in favor of the case being exceptional. Again, one of your opinions, Chief Judge Prost, in a case called Monolithic, pointed to exactly that. The site is 726 F. 3rd, 1359, pointed to exactly that fact, a patentee moving to dismiss after the defendants had completed their filings for final pretrial conference, wasting the party's and the court's resources. I will parrot my colleague, Judge Lurie, who always points out that none of us have our own opinions. They become opinions of the court. Sorry, Your Honor. Even better, opinion of the court. I just, I mean, you're right. Octane presumably did change the standard for attorney's fees, but the significance for us, the equal significance for us is high, Mark, and that we have to defer to district court judges on a very deferential standard, on totality of the circumstances, on a comment which is this stands out among others, which seems to suggest, are we talking about that particular judge's docket and what he's seen over the past 10 years? So it's a very high road to try to overturn a district judge on any other than clear error of law. Absolutely, and we appreciate that, Your Honor, but it hasn't stopped the court from reversing in a number of instances since high, Mark, and we think that this is another instance where that would be warranted. I only have a minute before my opening runs out to address the Lanham Act side of the case. The only thing I want to say there is just that there were a number of standards percolating in the courts' appeals for Lanham Act standing at the time this case was filed, and we think the fact that Aviva's claim to standing feels so clearly under all three and even under the Supreme Court standard in Lexmark, which subsequently superseded those standards. But this was another instance where at first the district court denied your first motion. So a district court who denies your first motion, granted your second, it's hard-pressed for that district court to then come back and say that it was objectively baseless or frivolous, right? Your Honor, the district court denied our motion to dismiss, and there were allegations in the complaint sufficient to support standing. The problem was there was never any evidence to support those allegations. So there may have been an allegation in the complaint that there was competition between Aviva and the retailers, but that allegation was never borne out by the evidence. We don't think the fact that the 12B6 motion was denied really affects the fact that the claim to standing, once push came to shove, its summary judgment really had no basis. Thank you. Why don't we hear from the other side? Good morning, Your Honors. May it please the Court, Tom Vitt for Aviva. I want to start where the Court did with the standard of review. And earlier this week, on Monday, this Court, in an opinion in which Chief Judge Prost was on the panel, reminded us that there are two species, really, of abuse of discretion. One where there's a clear error of law, or an error of law. That's been conceded didn't happen here. And the second where there's been a clearly erroneous assessment of the evidence, and the decision is based on that, it's really material to the decision. There's no argument here that that happened. What about your post-Markman allegation with regard to DOE? Doesn't that come under the rubric of baseless? No, Your Honor. And I really want to correct what is a misleading presentation in the reply briefing earlier today about how that came up. You have to understand that the retailer defendants did not move for summary judgment based on this baffles limitation entirely inside. They did not raise this issue at all in their summary judgment papers. Walmart raised it in their claim construction briefing. So when we responded to summary judgment, we argued against the seven or eight arguments that the retailers made, and we won every single one of those arguments. Once the court's claim construction came out in July, now Walmart has prevailed on a claim construction position, adding this limitation entirely inside the inflatable body. And at that point, our side conceded literal infringement in response to Walmart, who had raised it in their briefing. This was so objectively baseless, they didn't even notice it is what happened. And we made a showing under the doctrine of equivalence, but it wasn't perfunctory or baseless. It was a five-page affidavit by an expert explaining how the drawings in the patent, the way the court had construed them, really matched the Walmart product. It was selling manly products, the same products that they're selling. So there's no difference. And there was a four-page argument in the brief. Now, the judge didn't like it, but there was nothing wrong with raising it. And we also have to keep in mind the timing here. This all happened within a couple of months. So we asserted doctrine of equivalence against the party that raised this issue. We lost the issue, and then Claim 14 is over by November 7th in their case, December 3rd in Walmart's case, within a couple of months of the claim construction order. So really a standard way to proceed. We do think the doctrine of equivalence argument had some merit, but we didn't win. But it's not fair for them to say, well, that's a baseless claim, because they didn't even raise it. Can I point? Your friend didn't get around to talking about the taxable costs. Yes. But it's a little disturbing, isn't it? I mean, the rules, FRAP says costs should be awarded. Bottom line in this case, you didn't have to pay any costs. Doesn't that seem to be contrary to the statutory directive? No, Your Honor. Here's why. Absolutely, the retailers, as the prevailing parties, were entitled to costs. But they have to make a showing that they incurred costs and paid costs. That's true for anybody, right? They did not make that showing. They put in a bill of costs that shows every cost that was there was incurred by Manley, who's the losing party. This is all in the appendix. I've got the site. Let me get to that page of mine outlined. Appendix A, 1344 to 1372. So the cost bill that was put in was for Manley's costs. And again, this is an abuse of discretion standard. The clerk looked at it and said, there's no showing here that the retailer defendants incurred costs and paid costs. These are Manley's costs. You have to apportion them. And the district judge affirmed that. And this court should affirm, again, the issue is Manley can't get costs. They were the losing party. We had already been awarded those costs, we, Aviva, by the judge. No, but they're asking for a proportion of the costs. So they're asking for it. Why should they? OK, and the fallback position is give them a prorated share of the costs. Well, that would be fine if they had incurred or paid any costs and made a showing to the district court of that. They did not do that. The authority that they cite is situations where an insurance company, an outside party, pays for the defendant's costs. And of course, in that situation, the defendant still gets to recover those costs. Here, the losing party, Manley, paid for those costs. And they've made no showing that they incurred costs. So that's the threshold. Before you get costs, yes, as a matter of law, as a prevailing party, are they entitled to costs? Yes, they are. Did they make a showing that they incurred costs and paid costs? No, they did not. They put in bills that Manley paid. They're addressed to Manley. And the Bill of Costs Guide is very clear in the District of Minnesota. It says if you've got multiple parties on one side, winners and losers, you have to make some showing. And it also is clear, it says right in the Bill of Costs Guide, and this makes sense, we can't award costs more than once. We only award one set of costs. Well, the judge awarded $700,000 to my client, Aviva, because we won the default judgment against Manley and were awarded attorney's fees and costs for Manley's conduct in the case. So that's the cost issue, Your Honor. There hasn't been any showing. There's no authority anywhere that a defendant who's a winning party can recover costs paid by a losing party. If I could turn back to the standard review, I didn't want to lose the point I thought was persuasive. So what we have here is there's no showing of legal err and it's conceded. There's no attempt to show clearly erroneous fact-finding. So what we have is an attack on the district court's judgment, pure and simple, asking this court to substitute its judgment for the district court's judgment. I think Your Honors are familiar that that's not appropriate under Highmark. But to take it a step further, the court's judgment has to be so—it can't just be right or wrong—it has to be so wrong that it's an abuse of her discretion. If we look at Claim 14, which was really the focus of the argument, this was the standard claim construction argument that we see in most patent cases. The patentee, my client Aviva, argued that the word baffle should be given its ordinary meaning as a check between the upper surface and the lower surface to keep the product in its wedge shape. We argue that based on Phillips, the court's precedent, and dictionary definitions. Walmart—not these retailers. They didn't think of this. Walmart said, Judge, what you should do is you should add a limitation, do something unusual, add a limitation that says that baffle's got to be entirely inside the inflatable body. Now, the argument is made in this court that our position was objectively baseless because the claim language required that to be—that baffle to be entirely inside the inflatable body. And that's just—it just doesn't follow. The judge reasoned—and the question is, do we have an argument? It's not a question of whether we're right or wrong. But the judge reasoned that this side baffle D could not be a baffle because it was partly external. And the judge said, well, that doesn't attach the base to the upper surface, the upper surface E. Well, that just doesn't logically follow. That's not correct. The baffle D is attached to upper surface E at the side. It's supporting the wedge shape by being attached to the side. The other problem with counsel's argument is he ignores Claim 14. Claim 14 says that you raise the side baffle and the side wall to form a side rail. And the language—let me get to the right—the exact language. So you raise the side baffle, you raise the side wall to make this side rail such that the upper surface comprises a pair of side rails. So now this is the upper surface too. So our argument, which seems to me to be a reasonable, ordinary argument, is that baffle D, the whole segment, the side baffle, connects this upper surface E and this upper surface A, and it's doing what it's supposed to do in the claim. And the claim language actually supports us and not them. The other main argument that's made is that the file history somehow makes our claim impossible, our argument objectively baseless. And that's just not true. All the file history exchange said was a side baffle can't be a side wall. It distinguished—this side wall can't be a baffle. That's clear in the file history. But this can be a baffle. You can have a baffle here. There's just not the required showing made. And then the other argument that was made in the briefing, not really addressed here, is we're fighting about what the drawings mean. And I would just remind the court that your honors and your colleagues have many times cautioned us to be careful about the drawings. They're not meant to be exact, precise depictions of space or dimension. But we think, and we tried to explain in the papers, the drawings actually supported us. They think they support them.  But the one thing that is clear in the law is a drawing, a single embodiment, is not enough to read in a new limitation into the claim. So that's really Claim 14. I wanted to address the commentary about Claims 18 and 19, if I could. It was very brief in this morning's presentation, but it's prominent in the briefing. The important thing to know about that is that that argument was not raised to the district court. The argument that's made to your honors today in the briefing is that Claims 18 and 19 were so clearly invalid that Aviva's position was objectively baseless. To support that argument, counsel puts into the brief two pictures and two slides and makes an obviousness argument. That you combine those two pictures together and you've got an obviousness problem that should have been so clear to us that we never should have brought the case in the first place. That argument was not made to the district court. It was not made on summary judgment. It was not made in the fee petition. It has never been presented to the district court. And in the reply brief, the assertion is made that, well, we didn't have to really say all this in the fee petition because the judge knew all this already. That's a false statement. You need to understand that's not true. The judge had never been presented with that evidence, had never looked at those drawings. It's not anywhere in the record in front of the judge. So that's Claims 18 and 19. That really should end that. The other argument that's made is, well, we didn't have sufficient evidence of damages to go forward. There was a motion for summary judgment on that and we won. So we were ready to go to trial. That can't be an exceptional case. Then the final argument about Claims 18 and 19 is we didn't quit fast enough, basically. Well, we had a decision from the court that said you're entitled to go to trial on Claims 18 and 19. We had an interim decision from the patent office that was not favorable, but we still had the right to appeal. So we had a choice to make. And after the summary judgment ruling on Claim 14, we immediately did two things. Aviva immediately reached out to Walmart and over the course of a very short time, a few weeks, settled with Walmart, and they're not here today. We attempted the same process with these retailers who were represented by the same council that represented Manley, the party that's been sanctioned to the tune of a default judgment of over $8 million for litigation misconduct. And our council, Aviva's council, tried to approach the retailers knowing that there was no way that they could ever settle the case with Manley. It had to go direct to the retailers. And that was rebuffed. It didn't work. And so eventually, after this happened all within a few weeks, Aviva dropped the case. Now, there's kind of a fundamental inconsistency that runs throughout the entire papers. This is supposed to be some terrible thing that we put these retailers through for a month or two as they're getting ready for trial instead of dropping it sort of immediately after Claim 14 was dismissed because Claims 18 and 19 weren't worth as much. Well, if that's the case, then why didn't they ever put in any evidence that they hadn't made those sales? It would have been easy to do. And why, what party would really be spending money to get ready for trial if they had no infringement liability because they hadn't made any sales? It doesn't make any sense. It's just a way to drag this case out and make it harder for my client who's been at it for years with these folks. Okay, final point, the Lanham Act. Again, we're in an abuse of discretion world. The Lanham Act was dismissed on an argument, again, that Walmart brought for lack of what was then called prudential standing is now called statutory standing. It's gotten easier to bring the case under the Lexmark case. And our position below was Aviva sells water slides. Manly sells water slides. The retailers are falsely advertising Manly's water slides in their stores because the false advertising is the pictures and the depictions of the products. The retailers are falsely advertising Manly's water slides on their websites, again, depicting their water slides side by side with our water slides. That the retailers' actions have way more power than Manly's actions, obviously, because Kmart, Menards, and Fingerhut have a lot more exposure than Manly does on those websites. That harmed our client because every sale they make is a sale we don't get. So whatever test you apply, we had a reasonable argument. We were a competitor. We didn't sell very much because we were being destroyed by their false advertising, as the district court so found. The last argument that they make in the reply brief is, well, you didn't really have any damages. Lexmark case has made it very clear that is not a proper analysis under statutory standing. It's whether you're within that zone of interest and have approximate cause of harm. But in any event, we sure did have damages. Thank you. Thank you. Thank you, Alan. I'll begin just very briefly on the cost issue. The basic argument against cost is that we don't have authority for the fact that costs that were paid by a third party are somehow reimbursable. We think Moore's federal practice, which we cite in our brief, is right on point. It says the presumption that costs should be awarded to the prevailing party, quote, applies even if the costs were actually paid by some third party and not by the prevailing litigant. We don't see why there ought to be a different rule because the insurer happens to be a co-defendant rather than some other third party. So we don't think that's a persuasive basis to deny costs. I want to just briefly address the file history. I think perhaps the easiest way to understand the inconsistency between the file history and the position Aviva took at claim construction now in its brief is just to look at the picture on page 31 of their brief. If you're on time, you can look at it. They label that side rail there, the vertical plane of the side rail. Page A821, which is their brief to the PTO, they label that exact same thing, the upper surface. And that's sort of the key inconsistency because later on in their brief to the PTO, they say we have never called any part of the exterior wall a baffle. We've always called it either an upper surface, etc., etc., etc. So that seems to me a pretty clear concession, that upper surface and baffle are two totally separate things. And that's the sort of core of the inconsistency here. I'd like to also just briefly address the Lanham Acts. We didn't have much chance to discuss it before. We think a very helpful case and a helpful way to sort of wrap your head around why there was so clearly no standing in this case is something that was discussed at length at the summary judgment phase in the district court, an Eighth Circuit case called Yellow Book. The allegation there was the Association of American Orthodontists brought suit against the Yellow Book saying, hey, somebody's advertising themselves as an orthodontist in the Yellow Book, but they don't have the proper credential to be an orthodontist. And the Eighth Circuit said, no, there's no credential standing here. You cannot sue the Yellow Book. The Yellow Book is just the medium of the false advertisement. It's not the perpetrator of the false advertisement. And that's the exact situation we have here. The retailers were not the perpetrator of the false advertisements. They just sold products that allegedly had false advertisements attached to them. So the retailers were just the medium. They were not the perpetrator. And we're aware of no authorities saying that you can sue a retailer in that circumstance. It might be different if they could point to some evidence saying the retailers were somehow complicit in making these false advertisements or did it knowingly. But we're not aware of any evidence in the record of that. In fact, in their brief, Aviva's brief here in this court on page four, they say Kmart was aware of the falsity and continued to sell after the complaint was filed in this case. They cite to docket 196. If you actually look at what's cited there, it's an exhibit about Walmart. It's Walmart's answers to interrogatories. So as far as we know, there's no evidence in the record at all of the retailers doing anything to put themselves into complicity with Manly Toys. So we think there is clearly no basis for standing. The last thing I just want to say is Highmark, of course, is a deferential standard, abuse of discretion. But we think Highmark is a two-way street. On the one hand, it says this court ought to be deferential. But on the other hand, it behooves district courts to provide some explanation and some reasoning to support their conclusions. And we think the district court simply never explained why the claim construction position here was not frivolous, never explained why it was reasonable to persist as long as Aviva did, and never explained why Aviva could have had a reasonable basis to think it had standing. We think because the district court's reasoning is so spare, we think the rationale of Highmark, the deference that Highmark calls for, is weakened in this case. Thank you. We thank both counsel and the cases submitted.